UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X

VALENTIN TORRES,

                Petitioner,

                                                              **REPORT AND RECOMMENDATION**

   - against -                                           **20 CV 5723 (RPK)(LB)**

LYNN J. LILLEY,

                Respondent.

--------------------------------------------------------X

**BLOOM, United States Magistrate Judge:**

Petitioner, Valentin Torres, files this *pro se* petition for a writ of habeas corpus ("the petition") pursuant to 28 U.S.C. § 2254 challenging his 2016 New York Supreme Court, Kings County, conviction of Murder in the Second Degree, Assault in the Second Degree, and Criminal Possession of a Weapon in the Second Degree. The Honorable Rachel P. Kovner referred this petition to me for a Report and Recommendation in accordance with 28 U.S.C. § 636(b). For the reasons set forth below, it is respectfully recommended that the petition should be denied.

**BACKGROUND**

    **I.**      **The Underlying Crimes**

According to the evidence adduced at trial,[1] on August 25, 2013, at approximately 1:00 a.m., petitioner, Valentin Torres shot and killed Johnny Rosado and injured Jose Angomas. Trial Tr., ECF No. 4-3 at 1011, 1104 [hereinafter "TT."]. Earlier that night, at approximately 10:00 p.m., petitioner had gone to a party with a few friends. TT., ECF No. 4-3 at 14–15, 254.

---

[1] Petitioner was tried by a jury in New York Supreme Court, Kings County, from March 30, 2016 to April 8, 2016, before the Honorable Alan D. Marrus. Trial Tr., ECF No. 4-3 at 236, 1080. The trial transcript begins at ECF 4-3 at page 2 and concludes at ECF 4-3 at 1118.

Petitioner left the party with a group of friends around 1:00 a.m. Id. at 255. Petitioner and a friend sat on a stoop and encountered Johnny Rosado and Jose Angomas, who were coming from a different party up the street. Id. at 257, 621. Rosado yelled, "you disrespected my brother's wife." Id. at 369. Rosado then slapped petitioner's friend and Angomas punched petitioner in the face. Id. at 369–70. Petitioner pulled out a gun and fired approximately six shots, with three shots hitting Rosado. Id. at 372, 1052. Petitioner and his friends then ran towards Sunset Park, where petitioner threw the gun. Id. at 250. That same day, Detective Pantoja and Detective Lamoglia[2] went to the scene of the shooting and spoke with several witnesses. Id. at 275–276, 744. Detective Lamoglia then went to the 72nd Precinct in Brooklyn, where he spoke with several witnesses and two individuals of interest. Id. at 745–46.

On September 4, 2013, Detective Lamoglia arrested petitioner in New Jersey and brought him to the Paterson Precinct. Id. at 92, 755–59. Petitioner was asked whether he wanted to make a written statement. Id. at 92–93, 779. He wrote a statement in Spanish that Detective Lamoglia translated into English. Id. at 93, 781–83. Petitioner waived extradition, and on September 18, 2013, was brought to the 72nd Precinct in Brooklyn. Id. at 93, 784. Petitioner was identified as the person who shot Johnny Rosado at a lineup. Id. at 783–85.

## II. Petitioner's Trial

Petitioner was tried by jury in New York Supreme Court, Kings County, from March 30, 2016, to April 8, 2016, before the Honorable Alan D. Marrus. TT., ECF No. 4-3 at 236–1118. The prosecution called numerous witnesses to testify at trial, including Dr. Jay Stahl-Herz, an examiner in the New York City Office of the Chief Medical Examiner. Id. at 855–57. The prosecution questioned Dr. Stahl-Herz about the Rosado autopsy report. Id. at 861. Dr. Stahl-

---

[2] The trial transcript also refers to Detective Lamoglia as "Lemazelia" and "Lamazella." TT., ECF No. 4-3 at 92.

Herz testified that Rosado had three gunshot wounds, two in his chest, one in his left arm, as well as blunt injuries to his head, abdomen, left elbow, and right knee. Id. at 862. Dr. Stahl-Herz testified that he could not determine the temporal order of the gunshot wounds to Rosado. Id. at 867.

During deliberations, the jury sent two notes: i) "we need to know if a punch can be considered deadly force" and ii) "are fists considered deadly within the law[?]" Id. at 1081–1082. The state court instructed the jury to make their own conclusion whether the punch by Jose Angomas could be considered deadly force. Id. at 1100 (a punch "could be capable of deadly physical force or it might not be capable, depends on the facts and circumstances of the case…. It is a question of fact for you to decide whether or not the punch in this case constituted deadly physical force.") Regarding the jury's question about fists, the court stated that fists are not defined as a deadly weapon under state law. Id. at 1101.

The jury found petitioner guilty of Murder in the Second Degree, Assault in the Second Degree, and Criminal Possession of a Weapon in the Second Degree. Id. at 1103–06. Petitioner was sentenced to fifteen years to life on the murder charge, two years on the assault charge, and five years on the gun charge, all to be served concurrently. Sentencing Tr., ECF No. 4-4, at 11. [hereinafter "ST."]. In total, petitioner was sentenced to seventeen years to life and five years post-release supervision for the assault and gun charges. Id.

### III. Procedural History

Petitioner appealed his conviction to the New York State Appellate Division, Second Department, and raised three grounds: i) petitioner was deprived of his due process right to a fair trial due to the court's justification charge and the lack of an excessive force instruction, and counsel was ineffective for failing to object to the errors; ii) petitioner was deprived of his due

process right to a fair trial when the trial court failed to "meaningfully respond" to a jury note; and iii) the imposition of a 17 years to life sentence was excessive. Pet'r App. Div. Br., ECF No. 4-5 at 3–4. The state appellate court affirmed petitioner's conviction on July 22, 2020. People v. Torres, 185 A.D.3d 971 (2d Dep't 2020). The state appellate court found that: i) petitioner's challenges regarding the court's justification charge and lack of an excessive force instruction to the jury were unpreserved for appellate review and his ineffective assistance of counsel claim was without merit; ii) the court meaningfully responded to two notes from the jury; and iii) petitioner's sentence was not excessive. Id.

### IV.     Instant Petition

Petitioner timely filed the instant *pro se* petition seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Pet., ECF No. 1. Petitioner challenges his conviction on the same grounds that he raised on direct appeal. See Pet., ECF No. 1 at 3; see also Pet'r App. Div. Br., ECF No. 4-5 at 3–4, 9. Respondent opposes the petition. See generally Mem. Law in Opp'n to Pet'r Mot., ECF No. 4 at 6–23 [hereinafter "Resp't Br."].

## DISCUSSION

### I.     Standard of Review

The Antiterrorism and Effective Death Penalty Act ("AEDPA") provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or law or treaties of the United States." 28 U.S.C. § 2254(a). Under the AEDPA, the reviewing court may only grant a habeas petition if petitioner's claim "was adjudicated on the merits in State court proceedings" and the state court proceedings:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "This is a 'difficult to meet' . . . and 'highly deferential standard'[,]" and review "is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen v. Pinholster, 563 U.S. 170, 181 (2011) (citations omitted). Moreover, a state court's factual findings "shall be presumed to be correct unless the petitioner rebuts that presumption by clear and convincing evidence." Fernandez v. Capra, 916 F.3d 215, 221 n.1 (2d Cir. 2019) (citing § 2254(e)(1)) (internal quotation marks omitted).

A state court decision is "contrary to" clearly established Federal law if "the state court reached a conclusion of law that directly contradicts a holding of the Supreme Court" or, "when presented with 'facts that are materially indistinguishable from a relevant Supreme Court precedent', the state court arrived at a result opposite to the one reached by the Supreme Court." Evans v. Fisher, 712 F.3d 125, 132 (2d Cir. 2013) (quoting Williams v. Taylor, 529 U.S. 362, 405 (2000)). A state court decision is an "unreasonable application" of clearly established Federal law "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413. The Court cautions, however, that "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." Id. at 410; see also Grayton v. Ercole, 691 F.3d 165, 174 (2d Cir. 2012) ("[T]he writ may only issue where the state court's application of the law was not only wrong, but unreasonable."). A federal habeas court may only "issue the writ in cases where there is no possibility fairminded jurists could disagree that the

5

state court's decision conflicts with [the Supreme Court's] precedents." Harrington v. Richter, 562 U.S. 86, 102 (2011).

## II. Exhaustion and Procedural Default

A petitioner in custody pursuant to a state court judgment must exhaust his state court remedies prior to seeking federal habeas review. 28 U.S.C. § 2254(b)(1); see also Davila v. Davis, 137 S. Ct. 2058, 2064 (2017) ("The exhaustion requirement is designed to avoid the unseemly result of a federal court upset[ting] a state court conviction without first according the state courts an opportunity to . . . correct a constitutional violation." (citation and internal quotation marks omitted)). To exhaust state court remedies, the petitioner must satisfy the "fair presentation" requirement. Baldwin v. Reese, 541 U.S. 27, 29 (2004). A petitioner fairly presents a claim only if he "has informed the state court of both the factual and the legal premises of the claim he asserts in federal court," such that the state courts were "fairly alerted" to the claim's federal nature. Bierenbaum v. Graham, 607 F.3d 36, 47 (2d Cir. 2010) (citations and internal quotation marks omitted); see also Baldwin, 541 U.S. at 32 ("A litigant . . . can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal'."); Acosta v. Artuz, 575 F.3d 177, 188 (2d Cir. 2009) ("[A] claim is not 'fairly presented' to a state appellate court if discovery of that claim requires the court to 'read beyond a petition or a brief (or a similar document)' and conduct its own review of proceedings below." (quoting Baldwin, 541 U.S. at 32)).

In New York, fair presentation of a claim to the New York State Court of Appeals, the state's highest court, requires a petitioner to "include that claim in his letter-application to the Court of Appeals seeking leave to appeal." Carrasco v. Miller, No. 17-CV-7434 (JPC) (BCM),

6

2020 WL 9256469, at *14 (S.D.N.Y. Nov. 13, 2020), report and recommendation adopted, 2021 WL 1040473 (S.D.N.Y. Mar. 18, 2021) (citing Grey v. Hoke, 933 F.2d 117, 120 (2d Cir. 1991)).[3] If a petitioner "fails to exhaust his state remedies in a manner in which, were he to return to the state courts with his unexhausted claim, those courts would find the claim barred by the application of a procedural rule," the claim is deemed procedurally defaulted. Jackson v. Conway, 763 F.3d 115, 133 (2d Cir. 2014) (citation omitted).

Procedural default also bars federal habeas review where the state court decision rests upon "adequate and independent" state law grounds. Lee v. Kemna, 534 U.S. 362, 374 (2002); see also Green v. Travis, 414 F.3d 288, 294 (2d Cir. 2005) ("A federal habeas court lacks jurisdiction to evaluate questions of federal law decided by a state court where the state court judgment 'rests on a state law ground that is independent of the federal question and adequate to support the judgment'[.]" (quoting Coleman v. Thompson, 501 U.S. 722, 729 (1991))). "The rule applies with equal force whether the state-law ground is substantive or procedural." Lee, 534 U.S. at 375 (citing Coleman, 501 U.S. at 729). Federal habeas review of a claim is foreclosed where the state court "has expressly relied on the petitioner's procedural default as an adequate and independent state law ground, even where the state court has also ruled in the alternative on the merits of the federal claim." Green, 414 F.3d at 294 (citation omitted).

Petitioner may obtain federal habeas review of a procedurally defaulted claim if petitioner demonstrates either "cause for the default and prejudice," or that "failure to consider the claim will result in a miscarriage of justice (i.e., the petitioner is actually innocent)." Aparicio v. Artuz, 269 F.3d 78, 90 (2d Cir. 2001) (citing Coleman, 501 U.S. at 748–50).

---

[3] The Clerk of Court is directed to send petitioner the attached copies of all the unreported cases cited herein.

### III. Petitioner's Claims

#### A. Petitioner's Fair Trial Claim
#### Justification Charge and Lack of an Excessive Force Instruction

Petitioner argues that the state court's justification charge and lack of an excessive force instruction deprived him of a fair trial. Pet., ECF No. 1 at 7. At trial, petitioner admitted that he shot Rosado but claimed that he did so in self-defense. Id. at 9–10. Justification was central to his case. Id. Petitioner emphasized the height and weight of Johnny Rosado and Jose Angomas to argue that his conduct was justified. Id. On appeal, the state appellate court concluded that the state court's justification charge and lack of an excessive force instruction to the jury were unpreserved for appellate review and in any event, the jury was correctly instructed. See Torres, 185 A.D.3d at 971.

As petitioner failed to object at trial regarding the charge and instruction, these claims are unpreserved. The "contemporaneous objection" rule, N.Y. C.P.L. § 470.05(2), has been held to be an adequate and independent state law ground that bars federal habeas review. See Gainey v. Conway, 459 F. App'x 57, 58 (2d Cir. 2012) (finding New York's "contemporaneous objection" rule to be an adequate and independent state law ground to bar review of constitutional claim); see also Coleman, 501 U.S. 722, 747 (1991) (noting that the Supreme Court has consistently held that a state's contemporaneous objection rule is an independent and adequate state ground barring federal habeas review). Thus, federal habeas review of petitioner's claim regarding the charge and instruction is barred unless petitioner demonstrates cause for the default and actual prejudice as a result of the alleged violation of Federal law, or demonstrates that failure to consider the claims will result in a fundamental miscarriage of justice. See Coleman, 501 U.S. at 724. Respondent argues that petitioner has neither shown cause and prejudice for his default nor demonstrated that failure to consider his claims will result in a fundamental miscarriage of

8

justice. Resp't Br., ECF No. 4-1 at 9; see also Coleman, 501 U.S. at 725 (holding that petitioner was barred from bringing his federal claims because he had neither shown "cause" nor argued that review of his claims was necessary to prevent a fundamental miscarriage of justice). The Court agrees. As these claims are procedurally barred, the Court should not consider them.

### i. Petitioner's Claims are Without Merit

However, even if petitioner's challenge to the state court's justification charge and the lack of an excessive force instruction were not barred and the Court could consider them, they would be denied as without merit. "In order to obtain a writ of habeas corpus in federal court on the ground of error in a state court's instructions to the jury on matters of state law, the petitioner must show not only that the instruction misstated state law but also that the error violated a right guaranteed to him by [F]ederal law." Casillas v. Scully, 769 F.2d 60, 63 (2d Cir. 1985). Petitioner fails to demonstrate that the court's justification instruction violated a right guaranteed to him by Federal law. Petitioner cites no authority when he claims that the state court's justification instruction created an "unconstitutionally skewed deliberative process" when it directed the jury to consider the justification defense after considering the elements of the murder and assault counts. Pet., ECF No. 1 at 9. There is no authority that such an instruction misstates state law and violates a right guaranteed to petitioner by Federal law. Based on the record herein, the state court's justification instruction did not deprive petitioner of any constitutional right.

Similarly, petitioner fails to demonstrate that the lack of an excessive force instruction violated a right guaranteed to him by Federal law. Respondent argues that the excessive unjustified force charge is without merit, as there was no reasonable view of the evidence that would have justified such a charge. Resp't Br., ECF No. 4-1 at 12. The medical examiner's testimony established that two of Rosado's gun shot wounds could have caused his death on their

9

own and that it is impossible to temporally separate them. TT., ECF No. 4-3 at 896–97. Thus, the state court's decision regarding petitioner's justification and excessive force instruction was not contrary to or an unreasonable application of clearly established Federal law.

### ii. Ineffective Assistance of Counsel Claim

Petitioner argues that his trial attorney was ineffective for not objecting to the state court's justification charge and failure to give an excessive force instruction to the jury. Pet., ECF No. 1 at 11–12. Specifically, petitioner argues that the jury was not instructed in a manner that comports with the Constitution and therefore, counsel's performance was constitutionally ineffective. Id. at 12. Respondent argues that petitioner received effective assistance and the state court's decision denying petitioner's claim was not contrary to or an unreasonable application of clearly established Federal law. Resp't Br., ECF No. 4-1 at 12–13. Respondent also argues that petitioner cannot show that he was prejudiced by counsel's conduct, because the Appellate Division decided petitioner's unpreserved claims on the merits and rejected them. Id. at 13. The Court agrees.

To establish a claim of ineffective assistance of counsel, petitioner must show that: i) counsel's performance was deficient and "fell below an objective standard of reasonableness" and ii) petitioner suffered prejudice as a result of counsel's deficient performance, as demonstrated by reasonable probability that "but for the counsel's unprofessional errors, the result of the proceedings would have been different." Strickland v. Washington, 466 U.S. 668, 669 (1984). Under the second prong of the Strickland test, reasonable probability is "a probability sufficient to undermine confidence in the outcome" Id. The combined deferential standards of review under the AEDPA and Strickland create a "doubly" deferential standard of

review for ineffective assistance of counsel claims. See Harrington, 562 U.S. at 105 (citation and internal quotation marks omitted).

Petitioner's claim fails both prongs of the Strickland test. First, petitioner fails to demonstrate that counsel's performance fell below an objective standard of reasonableness. The state appellate held that the trial court's justification charge was proper, and counsel was not ineffective for failing to make a futile objection. See Torres, 185 A.D.3d at 971. Where a petitioner's underlying claim "plainly lacks merit," it cannot give rise to a claim of ineffective assistance of counsel as a matter of law. Aller v. Lape, No. 09-CV-1192, 2011 WL 1827443, at *5 (E.D.N.Y. May 12, 2011); see also Valentin v. Johnson, No. 20-CV-1384, 2022 WL 2304172, at *14 (N.D.N.Y. June 27, 2022) (rejecting petitioner's argument that counsel was ineffective for failing to raise a claim that the state court found to be meritless). Additionally, the Court must be "mindful of the broad range of strategic decisions that fall within the purview of trial counsel." Licausi v. Griffin, 460 F. Supp. 3d 242, 259 (E. D. N. Y. 2020). A lawyer's strategic decisions regarding petitioner's defense does not constitute deficient performance.

Second, petitioner fails to demonstrate that there was a "strong likelihood" that the jury would have found differently if the court had given an excessive force instruction. Pet., ECF No. 1 at 12. Therefore, petitioner fails to satisfy the second prong of the Strickland test, that he suffered prejudice as a result of counsel's performance.

In sum, petitioner fails to establish ineffective assistance of counsel under the highly deferential Strickland standard. See Harrington, 562 U.S. at 778 (noting that the question in a Strickland inquiry is "whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common

11

custom."). As such, the state court's decision on petitioner's ineffective assistance of counsel claim was not contrary to or an unreasonable application of clearly established Federal law.

### B. Petitioner's Fair Trial Claim
###     Jury Instruction Charge

Petitioner argues that because of the court's failure to "meaningfully respond" to two jury notes, petitioner was deprived of a fair trial. Pet., ECF No. 1 at 15. Petitioner argues that when he was punched by Jose Angomas, it constituted deadly physical force, which in turn justified his use of deadly physical force.[4] Id. at 10. Petitioner further argues that the court's supplemental instruction failed to dispel the jury's confusion and as a result prejudiced petitioner by eviscerating his justification defense. Id. at 15. The state appellate court rejected petitioner's claim and concluded that the trial court "provided a meaningful response to two notes from the jury, which asked if a punch could constitute deadly force and if fists were deadly weapons." See Torres, 185 A.D.3d at 971.

The United States Supreme Court's "habeas precedent places an 'especially heavy' burden on a defendant who … seeks to show constitutional error from a jury instruction that quotes a state statute." Robinson v. Heath, No. 12-CV-2116, 2013 WL 5774544 at *6 (E.D.N.Y. Oct. 24, 2013) (quoting Waddington v. Sarausad, 555 U.S. 179, 190 (2009)). Petitioner must show that "the instruction was ambiguous and that there was a reasonable likelihood that the jury applied the instruction in a way that relieved the State of its burden of proving every element of the crime beyond a reasonable doubt." Waddington, 555 U.S. at 831 (internal quotation marks and citation omitted). Further, a jury instruction by itself will not warrant habeas relief unless it

---

[4] Petitioner states that he was afraid for his life and reasonably believed his use of deadly physical force was necessary to prevent the man who hit him from inflicting serious physical injury. Pet., ECF No. 1 at 10.

"so infect[s] the entire trial that the resulting conviction violates due process." Id. at 832. Petitioner fails to meet this high threshold.

The state appellate court determined that the court's supplemental instruction was "fair and balanced, and it did not invade the province of the jury." Torres, 185 A.D.3d at 971 (internal quotation marks and citation omitted). The trial court provided multiple limiting instructions, effectively directing the jurors to draw their own conclusions about whether or not the punch in this case constituted deadly physical force. TT., ECF No. 4-3 at 1100–1101. Further, the trial court correctly stated that fists are not defined as a deadly weapon under state law. Id. at 1101; see also Resp't Br., ECF No. 4-1 at 18–19. Ultimately, as the state court responded to the jurors' notes by using the definitions provided by the state statute,[5] petitioner fails to demonstrate any constitutional error. Therefore, the state court's decision was not contrary to or an unreasonable application of clearly established Federal law, and the petition should be denied.

### C. Petitioner's Sentence

Petitioner was sentenced to an aggregate sentence of seventeen years to life in prison and five years of post-release supervision for criminal possession of a weapon and assault. ST., ECF No. 4-4 at 11. Petitioner argues that his seventeen years to life sentence was excessive in light of his status as a first-time offender. Pet., ECF No. 1 at 19–20; see also Pet'r App. Div. Br., ECF No. 4-5 at 62. An excessive sentence claim is not cognizable on federal habeas review where the length of a sentence is within the prescribed state law range. See White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992) ("No federal constitutional issue is presented where . . . the sentence is within the range prescribed by the state law."); see also Cardova v. Lavalley, 123 F. Supp. 3d

---

[5] The state trial court's supplemental instruction clarified the phrase "deadly physical force" as defined in N.Y.P.L. § 35.15 and the definition of "deadly weapon" as defined in N.Y.P.L. § 10.00(12). TT., ECF No. 1 at 1100.

387, 398 (E.D.N.Y. 2015) ("It is well settled that an excessive sentence claim may not be raised as grounds for habeas corpus relief if the sentence is within the range prescribed by state law." (citations omitted)).[6]

Here, petitioner's sentence falls within the range prescribed by state law. Resp't Br., ECF No. 4-1 at 22. Therefore, petitioner's excessive sentence claim is not a cognizable ground for habeas relief.

## CONCLUSION

Accordingly, it is respectfully recommended that petitioner's application for a writ of habeas corpus under 28 U.S.C. § 2254 should be denied. As petitioner has not made a substantial showing of the denial of any constitutional right, no certificate of appealability should be issued. 28 U.S.C. § 2253; see Lozada v. United States, 107 F.3d 1011, 1017 (2d Cir. 1997), abrogated on other grounds by United States v. Perez, 129 F.3d 255, 259–60 (2d Cir. 1997) (discussing the standard for issuing a certificate for appealability). It is further recommended that for purposes of an appeal *in forma pauperis*, the Court should certify pursuant to 28 U.S.C. § 1915(a) that any appeal from a judgment denying this petition would not be taken in good faith. Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

---

[6] As stated in N.Y.P.L. § 125.25, the range prescribed by state law is a minimum sentence of fifteen to forty years.

**FILING OBJECTIONS TO THE REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. See also Fed. R. Civ. P. 6. Any request for an extension of time in which to file objections must be made within the fourteen-day period. Failure to timely file an objection to the Report and Recommendation generally waives any further judicial review. DeLeon v. Strack, 234 F.3d 84, 86 (2d Cir. 2000); Spence v. Superintendent, Great Meadow Corr. Fac., 219 F.3d 162, 174 (2d Cir. 2000); see also Thomas v. Arn, 474 U.S. 140, 155 (1985).

SO ORDERED.

_____/S/_____
LOIS BLOOM
United States Magistrate Judge

Dated: September 16, 2022
       Brooklyn, New York